IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MADISON POWELL, a Minor, by THERESA | : | CIVIL ACTION |
| POWELL, Guardian, and THERESA POWELL, | : | |
| Individually, | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| SMITHKLINE BEECHAM CORPORATION | : | NO. 13-3693 |
| d/b/a GLAXOSMITHKLINE, | : | |
| and PAR PHARMACEUTICALS, | | |
| | : | |
| Defendant. | : | |

## MEMORANDUM RE: PLAINTIFFS' MOTION TO REMAND

Baylson, J.                                                        September 26, 2013

An issue that has recently divided judges in this District is whether a defendant can remove to federal court a previously remanded case when jurisdiction depends on diversity and more than a year after the action commenced, the legal basis of the first remand is invalidated by an appellate court in a similar, but unrelated action. This Court holds that such a case is not removable and will GRANT Plaintiffs' Motion to Remand.

## I.    FACTS AND PROCEDURAL HISTORY

Plaintiffs Madison Powell ("Daughter") and Theresa Powell ("Mother") are citizens of California who allege suffering harm from Mother's use of the drug Paxil during pregnancy. Paxil is an antidepressant medication produced by Defendant GlaxoSmithKline ("GSK"). A generic version of Paxil is produced by the Co-Defendant Par Pharmaceuticals LLC ("Par").

On June 8, 2011, Plaintiffs commenced this action by filing a short form complaint in the Philadelphia Court of Common Pleas Mass Torts Program. After Defendants filed a timely

notice of removal, Plaintiffs moved to remand.  Our Chief Judge ordered that the motion be consolidated with several other remand motions in similar Paxil cases before Judge Savage.  On December 12, 2011, Judge Savage granted the consolidated motion, holding that GSK was a citizen of Pennsylvania and that the "forum defendant rule" barred GSK from removing the cases.  Maldonado v. SmithKline Beecham Corp., 841 F. Supp. 2d 890 (E.D. Pa. 2011).  After the remand order was transmitted to state court, the parties engaged in substantial discovery, resolved numerous motions on the admissibility of expert testimony, and filed various pre-trial motions that are currently pending before Judge Arnold New in Philadelphia's Mass Torts Program.

Simultaneous to the Paxil litigation, a separate series of cases were filed against GSK over alleged birth defects from the drug thalidomide.  As with the Paxil cases, GSK filed notices of removal, plaintiffs filed motions to remand, which were consolidated.  On June 2012, Judge Diamond denied the consolidated motions based on his conclusion that GSK is a Delaware citizen.  Johnson v. SmithKline Beecham Corp., 853 F. Supp. 2d 487 (E.D. Pa. 2012).  Judge Diamond recognized, however, that an "extremely troubling" legal uncertainty existed about GSK's citizenship status and certified his ruling for interlocutory review so that the Third Circuit could provide "much-needed guidance."  Id. at 497-98.  The Third Circuit agreed to decide the appeal and affirmed Judge Diamond's decision, holding that GSK is a citizen of Delaware.  See Johnson v. SmithKline Beecham Corp., --- F.3d ---, 2013 WL 2456043, at *1 (3d Cir. 2013).  The Third Circuit was silent, however, on what effect, if any, its ruling would have on similar cases, such as the one at bar.

On June 26, 2013, less than 30 days after the Third Circuit published its <u>Johnson</u> opinion, Defendants filed a second notice of removal in this and eight other Paxil cases,[1] and Plaintiffs again moved to remand.  On July 24, 2013, Judge Bartle denied the motion to remand in one of the eight related cases.  <u>Guddeck v. SmithKline Beecham Corp.</u>, --- F. Supp. 2d ---, 2013 WL 3833252, at *5 (E.D. Pa. July 24, 2013).  According to Judge Bartle, the Third Circuit's decision in <u>Johnson</u> makes Judge Savage's remand opinion a "nullity" that can be disregarded when assessing the removability of the initial pleading.  <u>Id.</u> at *5.  In Judge Bartle's view, the Paxil cases were "initially removable" at the pleading stage and, as such, are not subject to the one-year time limit on removal.  Two other judges in this Court (Judge McLaughlin and Judge Buckwalter) have followed Judge Bartle with summary orders that reference and adopt Judge Bartle's reasoning.

More recently, however, Judge Padova granted the motion to remand in <u>Cammarota v. SmithKline Beecham Corp.</u>, No. 13-3677, 2013 WL 4787305 (E.D. Pa. Sept. 9, 2013).  Judge Padova held that GSK's second removal was untimely because the action was not initially removable and GSK's second notice of removal was filed more than a year after the action commenced.

On September 11, 2013, the Court held a hearing in which counsel for the parties argued their respective positions.  The parties submitted short supplemental briefs after the hearing, which the Court has carefully considered.

---

[1] <u>Guddeck v. GSK</u>, No. 13-3696 (Bartle, J.); <u>Cintao v. GSK</u>, No. 13-3681 (Buckwalter, J.); <u>Nieman v. GSK</u>, No. 13-3695 (Buckwalter, J.); <u>Kenney v. GSK</u>, No. 13-3675 (Goldberg, J.); <u>Moore v. GSK</u>, No. 13-3676 (Goldberg, J.); <u>Raden v. GSK</u>, No. 13-3694 (Jones, J.); <u>Staley v. GSK</u>, No. 13-3684 (McLaughlin, J.); <u>Cammarotta v. GSK</u>, No. 13-3677 (Padova, J.).

II.    LEGAL FRAMEWORK

A.    **Federal Removal Statute**

Congress enacted the removal statute with an intent to 'abridge the right of removal,'"

Am. Fire & Cas. Co. v. Finn, 341 U.S. 6, 9-10 (1951), an intent that gives due regard to the

comity principles that underlie our federal system, Shamrock Oil & Gas Corp. v. Sheets, 313

U.S. 100, 108–09 (1941).  The removal statute evinces this intent, in part, by barring courts from

reviewing, "by appeal or otherwise," previous remand orders.  28 U.S.C. § 1447(d); United

States v. Rice, 327 U.S. 742, 751 (1946).  Under this provision, "[e]ven a federal court,

persuaded that it has issued an erroneous remand order, cannot vacate the order once entered."

Hunt v. Acromed Corp., 961 F.2d 1079, 1081 (3d Cir. 1992); accord Kircher v. Putnam Funds

Trust, 547 U.S. 633, 642 (2006).  Since "nothing could be more inclusive than the phrase 'on

appeal or otherwise,'" In re La Providencia Development Corp., 406 F.2d 251, 252-53 (1st Cir.

1969), courts have warned against creating remedies that become "the functional equivalent of a

motion to review or reconsider," Brierly v. Alusuisse Flexible Packaging, Inc., 184 F.3d 527,

532 (6th Cir. 1999).  The removal statute's protection of comity and federalism principles is

particularly apparent in cases that raise only state law claims, as the statute's one-year time limit

on removal applies only to diversity jurisdiction cases.  28 U.S.C. § 1446(b).

A civil action may be removed from state court to federal court if there is original

jurisdiction and the removal complies with the statute's procedural requirements.  28 U.S.C. §§

1441(a) and § 1446. The statute's procedural requirements are set forth in Section 1446, which

Congress amended in 2011.[2]  Since the amendment did not take effect until January 6, 2012, this

Court will interpret the removal statute as it existed when this action first commenced.

---

[2] See Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758, 760-65.

When a defendant files for removal, the plaintiff may move to remand on either jurisdictional or procedural grounds.  28 U.S.C. § 1447(c).  Here, Plaintiffs base their motion on the procedural grounds that GSK's second removal is untimely under 28 U.S.C. § 1446(b).  To be timely under § 1446(b), a defendant must remove within 30 days of receiving the initial pleading if the case's removability is ascertainable from the pleading's allegations.  If removability is not ascertainable from the initial pleading, the defendant must remove within 30 days of receiving "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is or has become removable."  The statute's one-year time limit on removing diversity cases applies only to cases that are not initially removable.  Brown v. Tokio Marine & Fire Ins. Co., 284 F.3d 871, 873 (8th Cir. 2002).

## B.      Standard of Review

The Third Circuit instructs that the federal removal statute be "strictly construed against removal and all doubts should be resolved in favor of remand."  Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987).  When challenged, the defendant bears the burden of proving the propriety of removal.  Dukes v. U.S. Healthcare, Inc., 57 F.3d 350, 359 (3d Cir. 1995); Corinthian Marble & Granite, Inc. v. T.D. Bank, N.A., No. 12-3744, 2013 WL 272757, at *2 (E.D. Pa. Jan. 24, 2013).

## III.    THE ISSUES

This case presents the following four issues:

**(A) Does 28 U.S.C. § 1447(d) prohibit removal?**  Plaintiffs argue that § 1447(d)'s non-reviewability provision prohibits Defendants' second removal because it "is, in effect, a request for review of a remand order already issued by this Court."  Pl. Mot. at 8.  Defendants contend, however, that the Third Circuit "directly addressed and rejected this argument" in Doe v.

American Red Cross, 14 F.3d 196 (3d Cir. 1993).  Def. Resp. Br. at 3.  Defendants argue that the

Johnson decision qualifies as an "intervening order" under Doe and thus provides *new* grounds

for removal.  Accordingly, Defendants assert that removing this case based on Johnson would

not run afoul of § 1447(d)'s prohibition on reviewing prior remands.

      **(B) Does the <u>first</u> paragraph of 28 U.S.C. § 1447(d) govern this dispute?**  At the time

this action commenced, § 1446(b) contained two unenumerated paragraphs.  The first paragraph,

which is now § 1446(b)(1), governs cases whose removability is ascertainable from the initial

pleading.  The second paragraph, which is now § 1446(b)(3), governs cases whose removability

does not become apparent until some later point in the litigation.  The question of which

paragraph governs is significant because courts have held,[3] and Plaintiffs do not dispute, that the

one-year time limit only applies to cases governed by the second paragraph.

      Defendants argue that the first paragraph governs this dispute because the Johnson

decision demonstrates that the removability of this case was ascertainable from the initial

pleading.  It is irrelevant that Judge Savage reached a different conclusion, Defendants argue,

because the Johnson has rendered Judge Savage's opinion a legal nullity.  Under Defendants'

theory, therefore, nothing stops this Court from retroactively determining that the case was

removable at the time of the initial pleading.

      Plaintiffs counter by arguing that Judge Savage's remand order, erroneous or not,

provides the definitive word on whether this case was removable at the initial pleading stage.

Since Judge Savage held that the case was not initially removable, Plaintiffs argue that it would

violate § 1447(d) for this Court to rule to the contrary.

---

[3] E.g., Brown, 284 F.3d at 873; Johnson v. Heublein, Inc., 227 F.3d 236, 241 (5th Cir. 2000); Brierly, 184 F.3d at 534; Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1316–17 (9th Cir. 1998).

**(C) Is removal timely under the <u>second</u> paragraph?** Even if the first paragraph does not govern this dispute, Defendants argue that their removal was timely under the second paragraph as well.  Defendants claim that, under <u>Doe</u>, the <u>Johnson</u> ruling is an "order" that triggered a "new 30-day window within which to remove the case."  Not. of Removal ¶ 37. Plaintiffs counter by pointing out that <u>Doe</u> was not a diversity case and thus cannot be read as permitting removal beyond the second paragraph's one-year time limit on diversity cases.

**(D) Should the one-year time limit be equitably tolled?**  If the second paragraph applies, Defendants alternatively argue that the equities in this case warrant an equitable tolling of the one-year time limit.  According to Defendants, it would be "both arbitrary and unfair to impose the one-year time limit simply because it took the district and appellate courts more than a year after the case was filed to settle the question of GSK's citizenship."  Not. of Removal ¶ 42.  Plaintiffs counter by arguing that equitable tolling of the one-year time limit is only justified if the untimely removal was caused by plaintiff misconduct.  Since there is no allegation of misconduct here, Plaintiffs contend that the circumstances do not justify an equitable exception.

## IV.   ANALYSIS

### A.   Removing This Case Based on <u>Johnson</u> Is Likely Barred by § 1447(d)

Defendants contend that the recent ruling in <u>Johnson</u> allows this Court to vacate Judge Savage's remand order without running afoul of § 1447(d)'s prohibition on reviewing prior remands.  Def. Resp. Br. at 3.  Defendants base this argument on <u>Doe</u>, which they argue "directly addressed" this precise issue.  <u>Doe</u>, however, was decided in a significantly different context that limits its direct applicability to the circumstances here.  For the reasons discussed below, the Court is unpersuaded that removing this case would be consistent with § 1447(d).

In <u>Doe</u>, the Third Circuit considered two questions: (1) whether a Supreme Court order that authorized the Red Cross "to remove from state to federal court *any* state-law action it is defending" applied to cases that had previously been remanded, and (2) whether the Supreme Court's order qualified as an "order or other paper" that can trigger removal under § 1446(b)'s second paragraph.  <u>Id.</u> at 197 (quoting <u>Am. Nat'l Red Cross v. S.G.</u>, 505 U.S. 247, 248 (1992)).  The court answered both questions in the affirmative, but emphasized that its approach and holdings were narrowly confined to the unique facts before it.  <u>Id.</u> at 198, 202.

In answering the question of whether the Supreme Court's ruling applied to previously remanded cases, the Third Circuit considered whether this would conflict with § 1447(d)'s non-reviewability provision.  The court concluded that it would not conflict because the re-removal was based on "a new and definitive source, the intervening order of the highest court in the land,"[4] and not a mere "rehash of [Red Cross's] original argument."  <u>Id.</u> at 200.  Defendants argue that § 1447(d) does not prevent removal here because, as in <u>Doe</u>, their "second Notice of Removal does not rehash their original argument . . ., but rather cites 'a new and definitive source'—the Third Circuit's decision in <u>Johnson</u>."  Def. Resp. Br. at 4.

Defendants, however, fail to grapple with a significant distinction between the two cases.  In <u>Doe</u>, the "intervening order" expressly authorized Red Cross "to remov[e] from state to federal court *any* state-law action it is defending."  14 F.3d at 197.  The <u>Doe</u> court emphasized that the Supreme Court's ruling was "not simply an order emanating from an unrelated action but rather . . . an unequivocal order directed to a party to the pending litigation, explicitly authorizing it to remove *any cases it is defending*."  <u>Id.</u> at 202 (emphasis added).  Here, by contrast, the <u>Johnson</u> decision merely affirmed Judge Diamond's motion to remand in the case before it.

---

[4] The court also noted that the district court's remand order had expressly set forth that it was "without prejudice to defendants' right to petition for re-removal."  <u>Id.</u>

Johnson said nothing about Judge Savage's order, or any other cases that GSK is currently defending.

Since Johnson did not expressly authorize GSK to remove all similar actions, it is doubtful that Johnson qualifies as an "intervening order" for purposes of § 1447(d). This is particularly so if the word "order" in the phrase "intervening order" is defined in accord with the definition of "order" under § 1446(b). To be an "order" under § 1446(b), the order "must be sufficiently related" to the case in which removal is sought. Doe, 14 F.3d at 202-03. An order is "sufficiently related" if it comes "from a court superior in the same judicial hierarchy, was directed at a particular defendant and *expressly authorized* that same defendant to remove an action against it in *another case* involving similar facts and legal issues." Id. at 203 (emphases added). Here, Johnson did not expressly authorize removal in any other case than the one before it. It is doubtful, therefore, whether Johnson can qualify as an "order" under § 1446(b), and thus as an "intervening order" for purposes of § 1447(d). Doe does not provide an answer to this question.

Doe's silence on this question is significant because courts have long recognized that invalidating remand orders based on later changes in the law conflicts with the comity and federalism principles that Congress sought to promote in the removal statute.[5] The Tenth Circuit, for example, has stated that "[t]o allow a subsequent court decision to provide a sufficient basis in itself for a second petition to remove under § 1446(b) would destroy the finality of an order to remand and the Congressional policy of 'not permitting interruption of the litigation of the merits of a removed case by prolonged litigation of questions of jurisdiction.'" O'Bryan v. Chandler, 496 F.2d 403, 412 (10th Cir. 1974) (quoting Rice, 327 U.S. at 751).

---

[5] See Green v. R.J. Reynolds Tobacco Co., 274 F.3d 263, 266 (5th Cir. 2001) ("Most other courts to address the issue have found court decisions in unrelated cases not to constitute 'orders' or 'other papers' under § 1446(b) and not to be grounds for removal.").

Although O'Bryan did not address the same scenario that is presented here, its reasoning is nevertheless applicable. A district court in Ohio used identical reasoning to refuse re-removal when the Sixth Circuit invalidated the legal grounds upon which it had previously remanded the case. September Winds Motor Coach v. Med. Mutual of Ohio, No. 3:05CV7142, 2005 WL 1683670, at *1 (N.D. Ohio July 19, 2005). Noting that "[r]emand orders, erroneous or not, are final," the district court reasoned that permitting re-removal would be the "functional equivalent" of granting a motion to review or reconsider. Id. at *2. The court based its decision squarely on § 1447(d) and the longstanding rule that "a case may not be removed twice on the same grounds." Id. at *2 (citing St. Paul & C. Ry. Co. v. McLean, 108 U.S. 212 (1883)). "New grounds," the court noted, "means a different set of facts, not a new legal theory or subsequent caselaw." Id.

The Court does not believe that the § 1447(d) concerns raised by O'Bryan and September Winds were squarely addressed in Doe. As such, the Court has substantial doubts about whether Johnson can serve as the basis for removal without running afoul of § 1447(d). Since "all doubts should be resolved in favor of remand," Steel Valley, 809 F.2d at 1010, the Court believes the uncertainty surrounding § 1447(d) militates in favor of remand.

Assuming, however, that § 1447(d) does not preclude removal, the Court will proceed to determine which paragraph of § 1446(b) governs the timeliness of Defendants' removal.

**B.      First Paragraph Does Not Govern This Case**

Even if § 1447(d) does not provide an absolute bar to removal, it is still relevant to the question of whether the first paragraph can govern the timeliness of Defendants' removal. For the first paragraph to apply, this Court must override Judge Savage's determination as to the removability of the initial pleading. This kind of retroactive determination is incompatible with

10

§ 1447(d) and the broader statutory framework.  As discussed below, the Court's conclusion is buttressed by the conspicuous absence of any legal precedent for applying the first paragraph to re-removals based on later changes in law.  The cases that Defendants cite, although many in number, provide little support for the expansive theory they espouse.

       **1.**       ***Applying First Paragraph Would Be Incompatible with § 1447(d)***

Even if <u>Johnson</u> qualifies as an "intervening order," it is doubtful that <u>Johnson</u> justifies a retroactive determination that the case was initially removable.  This determination, which would invalidate Judge Savage's non-reviewable conclusion to the contrary, is neither justified by <u>Doe</u> nor compatible with § 1447(d).

<u>Doe</u> does not justify retroactive invalidations of remand orders because, unlike here, <u>Doe</u> did not determine if the case before it was *initially* removable.  <u>Doe</u> simply determined that previously remanded cases can "*become removable*" based on *new* developments (e.g., an "intervening order").  14 F.3d at 202 (emphasis added).  Here, by contrast, I am is asked to determine that the case *was* removable at a specific point in the past (i.e., at the time of the initial pleading).  In other words, for the first paragraph to apply, I must rule that the district court was wrong, not just now in light of new law, but *at the moment it entered the order*.  This kind of retroactive determination is far more akin to an "appeal or otherwise" than the forward-looking determination in <u>Doe</u>.  I am not persuaded, therefore, that intervening orders justify application of the first paragraph where, as here, the case had been remanded by court order at the pleading stage.

In reaching this conclusion, I respectfully disagree with Judge Bartle that Judge Savage's remand opinion can be treated as a "nullity."  <u>Guddeck</u>, 2013 WL 3833252, at *5.  We must remember that the Third Circuit did not reverse Judge Savage's opinion.  Rather, the Third

Circuit rendered a different conclusion in a separate appeal of Judge Diamond's ruling in Johnson. Although all district courts within this Circuit are now bound by Johnson's holding that GSK is a Delaware citizen, that does not make a prior judicial decision a "nullity" and treating it as such ignores § 1447(d)'s command that remand orders not be subject to review or reconsideration.

## 2.     *Courts Have Uniformly Applied Second Paragraph in Analogous Cases*

The Court's conclusion that the first paragraph of § 1446(b) does not govern this case is consistent with the approach of virtually every previous court to address re-removals premised, as here, on subsequent changes in the law. Such courts have invariably applied the *second* paragraph, which is significant because the second paragraph governs cases where the "initial pleading is *not* removable." 28 U.S.C. § 1446(b) (emphasis added).

In the Red Cross cases, for example, courts across the country, including the Third Circuit in Doe, were asked to determine the re-removal implications of a Supreme Court decision that invalidated the legal grounds upon which numerous cases had been remanded. The Supreme Court held that Red Cross's congressional charter confers original jurisdiction in all cases in which Red Cross is a party. S.G., 505 U.S. at 248. Under Defendants' theory, the re-removal of the remanded cases should have been governed by the *first* paragraph since the initial pleadings named Red Cross as a defendant. Notably, however, *every court* including the Third Circuit in Doe, analyzed the re-removal question under the second paragraph.[6] This is evident by the fact that all courts framed the question as whether the Supreme Court's decision was an "order" (a

---

[6] Doe, 14 F.3d at 198; Combs v. Am. Red Cross, No. 92-805, 1992 WL 349638 (D. Or. Nov. 16, 1992); Canney v. Am. Red Cross, No. 92-1525, 1992 WL 294816 (D.D.C. Oct. 5, 1992); Jones v. Am. Red Cross, No. 92-806, 1992 WL 565224 (D. Or. Aug. 31, 1992); Zelaya v. Brotman Med. Ctr., No. 92-4033, 1992 WL 559683 (C.D. Cal. Aug. 19, 1992); Smith v. Thomas Jefferson Univ. Hosp., No. 92-3872, 1992 WL 210582 (E.D. Pa. Aug. 25, 1992); Carr v. Am. Red Cross, No. 92-4035, 1992 WL 208976 (E.D. Pa. Aug. 18, 1992); Arnold v. Am. Nat'l Red Cross, No. 92-1340, 1992 WL 565229 (N.D. Ohio Aug. 12, 1992).

word that is only found in the second paragraph).  The Third Circuit thus described the second

paragraph as "the relevant part" of the statute.  Doe, 14 F.3d at 198.  While the Third Circuit's

characterization may simply reflect the question that it agreed to review,[7] the fact remains that

every district court prior to Doe considered the re-removal under the second paragraph, rather

than the first.

      Subsequent courts, including the Fifth Circuit, have also applied the second paragraph in

cases where re-removal is premised, as here, on a change in the law.  E.g., Green, 274 F.3d at

268; Williams v. Nat'l Heritage Realty Inc., 489 F. Supp. 2d 595 (N.D. Miss. 2007); Young v.

Chubb Group of Ins. Cos., 295 F. Supp. 2d 806 (N.D. Ohio 2003).  By treating the second

paragraph as the "relevant part" of the statute, the implicit consensus of these courts is that an

action remanded at the pleading stage does not subsequently become "initially removable" if the

law changes at some indefinite point in the future.

      I use the term "implicit consensus" because the courts in these cases did not expressly

rule out the potential applicability of the first paragraph.  While the significance of this

consensus would lose its force if an "order" can also trigger removal under the first paragraph, it

is doubtful that § 1446(b) can be read in this manner.  Such an interpretation, for example, would

conflict with the reasoning that courts have used to confine the one-year time limit to the second

paragraph.  E.g., Brierly, 184 F.3d at 534.  If the one-year time limit "can only be interpreted to

modify the antecedent clause to which it is attached, and not previous sections of the text," id., it

is unclear why the word "order" should not be similarly confined.  Furthermore, Congress has

made clear that courts should not second guess prior remand orders, O'Bryan, 496 F.2d at 412,

---

[7] The question that the Doe court accepted for review was: "Whether the decision of an 'unrelated' case—such as the decision of the Supreme Court in S.G. authorizing the Red Cross to remove from state to federal court any action it is defending—constitutes an 'order or other paper' under 28 U.S.C. § 1446(b) and thus provides a basis for a second removal petition."  14 F.3d at 198.

and that diversity cases should not be removed more than a year after they commence, <u>Hill Int'l, Inc. v. Suffolk Const. Co., Inc.</u>, No. 11-2645, 2011 WL 5854603, at *2 (D. Md. Nov. 21, 2011). Both of these congressional purposes would be frustrated if courts were to read the word "order" into the first paragraph, since this interpretation would allow diversity cases to qualify as "initially removable" *years* after district courts rule that they are *not*.  Since Congress intended to "abridge the right of removal," <u>Am. Fire</u>, 341 U.S. at 9-10, it is doubtful that Congress intended such an expansive interpretation of the statute.

Therefore, I also respectfully disagree with Judge Bartle's conclusion that "no reason" exists why an "order" cannot trigger removal under the first paragraph of § 1446(b).  <u>Guddeck</u>, 2013 WL 3833252, at *5.  Judge Bartle based this conclusion on <u>Doe</u>, which he found to have "striking" parallels with the present case.  <u>Id.</u> *4-5.  While there are some parallels between the two cases, there are equally important distinctions.  One critical distinction is that <u>Doe</u>'s jurisdiction was based on a *federal question*, not diversity.  This distinction, which Judge Bartle does not consider, is important because § 1446(b)'s one-year time limit does not apply to federal question cases.  <u>Doe</u> cannot be read, therefore, as allowing an "order" to trigger removal under the first paragraph where, as here, the case is based on diversity and more than a year has transpired since the action commenced.  Accordingly, I believe Judge Bartle placed undue reliance on <u>Doe</u> in applying the first paragraph to GSK's removal in this case.

### 3.       *Defendants Cite Cases That Are Readily Distinguishable*

Although Defendants cite cases to support their theory of retroactive removability, the cases they cite are readily distinguishable from the circumstances at issue here.  Most notably, Defendants fail to cite a single case where the first paragraph was applied to a removal in which a district court had previously remanded the case at the pleading stage.  As Plaintiffs note, "none

of GSK's cited cases involved an initial determination by the district court that the case w[as] not removable."  Pl. Mot. at 6.  Although Defendants dispute this characterization, the two cases they cite in rebuttal actually help to prove Plaintiffs' point.  See Def. Resp. Br. at 18 n.8 (citing Brown, 284 F.3d at 872; Brierly, 184 F.3d at 528).  While the Brown and Brierly courts applied the first paragraph to cases that had been previously remanded at the pleading stage, they did so on the basis of the "later served defendant" rule.  See Brown, 284 F.3d at 873; Brierly, 184 F.3d at 532.  Under the later served defendant rule, the thirty-day window for removing a case upon receiving the initial pleading is renewed every time the plaintiff serves a complaint on a new defendant.  It is of little relevance, therefore, that the Brown and Brierly courts applied the first paragraph, since the *newly served defendants* in these cases sought removal *after* receiving the initial pleading for the *first time*.  Here, by contrast, the *originally served defendants* seek to remove a *second time* based on the *same* initial pleading as before.

        While Defendants attempt to overcome this deficiency by analogizing to other first-paragraph cases, these too are easily distinguishable.  First, Defendants cite three cases where "[c]ourts have held that removal is timely [under the first paragraph] when a defendant's first removal was proper, the case was later remanded, and the defendant removed the case within 30 days when grounds for removal existed again."  Not. of Removal ¶ 31 (citing Williams v. Ford Motor Co., No. 12-cv-108, 2012 WL 5458919 (E.D. Mo. Nov. 8, 2012); Lassila v. Werner Co., 78 F. Supp. 2d 696 (W.D. Mich. 1999); Leslie v. BancTec Serv. Corp., 928 F. Supp. 341 (S.D.N.Y. 1996)).  In these three cases, however, the removability of the initial pleadings was "undisputed" and the cases were not remanded until *after* the pleading stage.  Here, by contrast, Judge Savage remanded the case *at the pleading stage.*

Second, Defendants cite four cases for the proposition that when a second notice of removal "serves only to amplify the grounds for removal already stated in the original notice, the contents of the second notice of removal relate back to the filing date of the first notice of removal." Not. of Removal ¶ 32 (citing USX Corp. v. Adriatic Ins. Co., 345 F.3d 190 (3d Cir. 2003); Godonou v. Rondo, Inc., No. 12-2113, 2012 WL 1969130 (E.D. Pa. May 31, 2012); Xia Zhao v. Skinner Engine Co., No. 11-7514, 2012 WL 1758145 (E.D. Pa. May 16, 2012); Monica v. Accurate Lift Truck, No. 10-730, 2010 WL 1631242 (E.D. Pa. Apr. 20, 2010)). In these "relate back" cases, however, the courts granted leave to amend while the plaintiffs' first motions to remand *were still pending*. Here, by contrast, the Court addresses a second notice of removal that was filed more than a year after Judge Savage remanded the case back to state court. The "relate back" doctrine thus provides little, if any, support for Defendants' argument that their second notice of removal is simply an "amendment of their original timely filed notice." Not. of Removal ¶ 33.

Finally, Defendants cite five cases for the proposition that the first paragraph "does not bar a defendant from removing a case on the basis of diversity jurisdiction a second time after more than one year if the case was removable based on its initial pleading." Not. of Removal ¶ 35 (citing Williams, 2012 WL 5458919, at *3-4; Darnell v. Hoelscher Inc., No. 11-cv-449, 2011 WL 2461951, at *10-11 (S.D. Ill. June 20, 2011); Hannah v. Am. Home Prods., Corp., No. 03-20376, 2004 WL 1535806, at *13 (E.D. Pa. June 18, 2004); Lassila, 78 F. Supp. 2d at 698-99; Leslie, 928 F. Supp. at 346-47)). For this proposition to be relevant, however, it must be shown that *this case* was also "removable based on its initial pleading." Four of the five cases that Defendants cite, however, provide no guidance on this question because the initial removability

of these cases was *undisputed*.[8]  While the fifth case that Defendants cite is more analogous to the present situation, it too can be easily distinguished.  See Hannah, 2004 WL 1535806, at *4.  In Hannah, the court made a retroactive determination that the case was initially removable more than a year after the action commenced.  Unlike here, however, Hannah's retroactive determination did not invalidate a prior remand order, as the case *had never been remanded*.  Moreover, the retroactive determination was not triggered by a mere change in the governing law, but by revelations that the plaintiffs had fraudulently concealed the removability of the case in the initial pleading.

In short, the cases that Defendants cite have little applicability to the circumstances that the Court addresses here.[9]  Defendants' arguments to the contrary are based on an expansive and strained interpretation of § 1446(b) that is at odds with the Third Circuit's instruction that the removal statute be construed narrowly.  Steel Valley, 809 F.2d at 1010.

## C.    Removal Is Untimely Under the Second Paragraph

Since Defendants' retroactive removability theory is not a viable one, the second paragraph of § 1446(b) governs the timeliness of removal.  It is doubtful, however, if Johnson qualifies as an "order" that can trigger removability under § 1446(b).  Even if it does qualify as an "order," Defendants' second removal notice is untimely because it occurred more than a year after the action commenced.  The Court will discuss both points briefly here.

---

[8] See Williams, 2012 WL 5458919, *1 ("[T]here is no dispute that the case was removable (and was in fact removed) when it was originally filed in state court . . . ."); Darnell, 2011 WL 2461951, at *4 ("The case stated by [the plaintiff's] initial pleading . . . was removable, as was demonstrated by [the defendant's] first successful notice of removal."); Lassila, 78 F. Supp. 2d at 696-97; Leslie, 928 F. Supp. at 346.

[9] The Court brought these deficiencies to Defendants' attention prior to oral argument.  While Defendants responded by producing five additional cases, these cases are equally unavailing in demonstrating that the first paragraph of § 1446(b) applies where, as here, the case is remanded at the pleading stage and the *same* defendants later file a second notice of removal based merely on a *change in the governing law*.  See Kemp v. CTL Distrib., Inc., 440 F. App'x 240 (5th Cir. 2011) (non-precedential); Franklin v. Codman & Shurtleff Inc., No. 13-4994, 2013 WL 1809533 (N.D. Tex. Apr. 30, 2013); Johnson v. Nat'l Consolidation Servs., LLC, No. 12-5083, 2013 WL 638600 (E.D. Pa. Feb. 21, 2013); Otero v. GlaxoSmithKline, LLC, No. 10-7163, 2011 U.S. Dist. Lexis 39926 (E.D. Pa. Apr. 7, 2011); LaCaffinie v. The Standard Fire Ins. Co., No. 10-207, 2010 WL 2207986 (W.D. Pa. May 28, 2010).

As discussed above in the § 1447(d) analysis, the <u>Johnson</u> opinion does not appear to qualify as an "order" under § 1446(b).  While Defendants contend that <u>Johnson</u> meets <u>Doe</u>'s definition of an order, their summary of <u>Doe</u> misses an important, and potentially dispositive, detail.  Defendants state that a court decision qualifies as an "order" under <u>Doe</u> if it: (1) comes from a higher court in the same jurisdiction, (2) involves the same defendant, and (3) involves the same asserted basis for removal.  <u>See</u> Not. of Removal ¶ 38.  This list, however, is incomplete, as it conspicuously omits one of the four factors that the <u>Doe</u> court identified: whether the superior court decision "expressly authorized th[e] defendant to remove an action against it in another case."  14 F.3d at 203.  This is a notable omission because <u>Johnson</u> *did not* expressly authorize GSK to remove other cases; <u>Johnson</u> simply affirmed Judge Diamond's remand order.  While some courts in other jurisdictions have not required express authorization,[10] Defendants have not pointed to any precedent in this Circuit that would justify this Court overlooking this consideration.

Even if <u>Johnson</u> qualifies as an "order," however, Defendants' removal is still untimely because it occurred more than a year after the action commenced.  Defendants' argument to the contrary can be quickly disposed of because it is based on a clear misreading of <u>Doe</u>.  Defendants claim that <u>Doe</u> establishes that an order triggers "a new 30-day window within which to remove the case."  Def. Not. of Removal ¶ 37.  This argument, however, overlooks the fact that <u>Doe</u> was a federal jurisdiction case and thus did not address, as the Court must here, the one-year window for removal. As the Ninth Circuit has made clear, the notice of removal in a diversity case "must be filed, in *any* event, within one year of the commencement of the action."

---

[10] <u>See, e.g.</u>, <u>Green</u>, 274 F.3d at 267-68; <u>Young</u>, 295 F. Supp. 2d at 808.  In <u>Green</u>, the Fifth Circuit recognized that <u>Doe</u> provides a "very limited" exception to the prevailing rule that "court decisions in unrelated decisions" do "not constitute 'orders' or 'other papers.'"  274 F.3d at 266-67.  Despite this recognition, <u>Green</u> does not explain why <u>Doe</u>'s express authorization requirement can be discarded without moving beyond the scope of the "very limited circumstances" under which <u>Doe</u> applies.  The <u>Young</u> decision suffers from the same deficiency.

Roth v. CHA Hollywood Med. Ctr., L.P., 720 F.3d 1121, 1123 (9th Cir. 2013) (emphasis added).
Here, Defendants filed their second notice of removal *two years* after the action commenced
which is clearly untimely under the second paragraph.  Removal can only be justified, therefore,
if an equitable exception applies, an issue to which the Court now turns.

**D.      Circumstances Do Not Justify Equitably Tolling the One-Year Time Limit**

The Third Circuit has determined that the one-year time limit is a procedural requirement
rather than a jurisdictional one.[11]  Ariel Land Owners, Inc. v. Dring, 351 F.3d 611, 615-16 (3d
Cir. 2003).  As such, several district courts in this Circuit have assumed that the one-year time-
limit can be equitably tolled if circumstances permit.[12]  Various Plaintiffs v. Various Defendants
("Oil Field Cases"), 673 F. Supp. 2d 358, 364 (E.D. Pa. 2009).

In determining whether to equitably toll the one-year time limit, previous courts have
invariably focused on whether the *plaintiff's intentional conduct* was the cause of the untimely
removal.  See, e.g., Tedford v. Warner-Lambert Co., 327 F.3d 423, 428-29 (5th Cir. 2003)
("Where a plaintiff has attempted to manipulate the statutory rules for determining federal
removal jurisdiction, thereby preventing the defendant from exercising its rights, equity may
require that the one-year limit in § 1446(b) be extended."); Namey v. Malcolm, 534 F.Supp.2d
494, 496 (M.D. Pa. 2008) (noting that prior courts have only equitably tolled the one-year time
limit where there is "intentional conduct on the part of the plaintiffs to circumvent removal").[13]

---

[11] A procedural requirement is one that "establishes the procedure for removal," whereas a jurisdictional requirement is one that determines the power of a federal court to hear the case.  Ariel, 351 F.3d at 614.  A rule is considered jurisdictional "if the case could not initially have been filed in federal court."  Korea Exchange Bank, N.Y. Branch v. Trackwise Sales Corp., 66 F.3d 46, 50 (3d Cir. 1995).
[12] While the Third Circuit has never expressly held that the one-year time limit is subject to equitable considerations, district courts have interpreted this as the "practical effect" of viewing the rule as procedural.  Medley v. Infantino, LLC, No. 12-3877, 2013 WL 857369, at *4 (E.D. Pa. March 1, 2013).
[13] More recent case law is consistent with the Namey court's assessment.  See, e.g., Nele v. TJX Cos., Inc., No. 11-7643, 2013 WL 3305269, at *5 (E.D. Pa. July 1, 2013); McGraw v. Lone Star Inds., Inc., No. 5:12cv90, 2012 WL 5286963, at *3 (S.D. Miss. Oct. 24, 2012); Taylor v. King, No. 5:12-CV-1, 2012 WL 3257528, at *3 (W.D. Ky. Aug. 8, 2012); Sanchez v. Am. Motorists Ins. Co., No. 1:12-CV-31, 2012 WL 2122194, at *2 (S.D. Tex. June 11,

Courts have also looked to the defendant's conduct, but in a manner that has *narrowed* the equitable exception.[14]  In other words, few, if any, decisions have found that a defendant's diligent pursuit of removal provides equitable grounds for removal *in the absence of plaintiff misconduct*.  A defendant's conduct is only relevant, therefore, for determining the degree to which the defendant's complicity in the untimely removal waived any right it may have had to an equitable exception.  Cammarota, 2013 WL 4787305, at *6.

Notably, Defendants do not base their argument here on plaintiff misconduct.  They argue, instead, that it would be "unjust" to find their removal time-barred "based on a fiction that the case was not initially removable."  Def. Resp. Br. at 19.  Since Judge Savage remanded the case on a legally erroneous basis, Defendants argue that it would be unfair to saddle them with the consequences of this error, particularly since they diligently pursued their right to removal after both the initial pleading and the Johnson ruling.[15]  Defendants do not cite any case, however, where a court equitably tolled the one-year rule on the grounds that a subsequent court decision in an unrelated case invalidated the legal grounds of a prior remand.

Plaintiffs, by contrast, point to a directly analogous case.  Pl. Repl. Br. at 9-10 (citing Williams v. Nat'l Heritage Realty Inc., 489 F. Supp. 2d 595, 596-97 (N.D. Miss. June 3, 2007)).  In Williams, the defendants filed a second notice of removal based on a state supreme court

---

2012); Grayson v. Moncla Well Serv., Inc., 844 F.Supp.2d 789, 794-95 (S.D. Miss. 2011); Lee v. Carter Reed Co., LLC, No. 06-1173, 2006 WL 3511160, at *4-5 (D.N.J. Dec. 5, 2006).

[14] See Corinthian Marble, 2013 WL 272757, at *6 (granting remand because defendant could have taken steps to avoid delay); Samii v. Allstate Ins., No. 10-2408, 2010 WL 3221924, at *1 (E.D. Pa. Aug. 12, 2010) ("Defendant was content to let the action sit, and thereby lost the opportunity to remove it to federal court."); Oil Field Cases, 673 F. Supp. 2d at 364 (granting remand because "defendants were content to let the cases languish in state court"); Namey, 534 F.Supp.2d at 496 (granting remand because, inter alia, defendants were "partly responsible for the delay in the proceedings in state court and did not use all procedural devices available to facilitate compliance with the one-year requirement of § 1446(b)").

[15] The fact that Defendants diligently pursued their right to removal is of little relevance since there is no allegation that Plaintiffs caused the delay.  Accord Cammarota, 2013 WL 4787305, at *6 ("[W]hile we recognize that GSK was not complicit in the removal delay in this case, we conclude that this fact is merely neutral, and neither favors nor disfavors an equitable exception.").

decision that undermined the legal basis of the federal district court's remand order.  The defendants, who had been litigating in state court for over a year, argued that the change in governing law provided an equitable basis for tolling their otherwise untimely removal.  The court, however, disagreed, noting that a change in law is an "event completely outside of the control of the plaintiff," and thus did not come within the one and only established exception to the one-year requirement.  Id. at 596.  Another federal court rejected a re-removal in a virtually identical case on precisely this ground.  See Rhodes v. Mariner Health Care, Inc., 516 F. Supp. 2d 611, 615 (S.D. Miss. 2007) (concluding that change in law did not trigger an equitable exception because the plaintiff "did not cause it").  According to Williams, "changes in the governing law are precisely the sort of events that § 1446(b)'s one-year limitations period is designed to preclude," because otherwise "removal issues would be subject to constant re-litigation as the underlying [legal] standards [a]re altered by judicial decisions and statutory enactments."  489 F. Supp. 2d at 597.

Since Defendants have not pointed to any case where an equitable exception was found under circumstances similar to the present, the Court would need to fashion a new equitable exception in order to deny remand.  Defendants argue that nothing prevents this Court from creating a new exception since cases in this District "have often noted the broad nature of equitable relief when it has been available in other circumstances."  Def. Resp. Br. at 19.  The question in this case, however, is not about the "nature of relief" (i.e., removal), but the circumstances under which this relief can be provided.  Moreover, the four cases that Defendants cite to support their argument about the broad nature of equitable relief involve statutes and circumstances that have little, if any, applicability to the present dispute.  In Hare v. Potter, 549 F. Supp. 2d 688, 697 (E.D. Pa. 2007), for example, the court addressed the type of equitable

relief that can be provided under Title VII.  The court's conclusion that it had "broad equitable discretion under Title VII to fashion the most complete relief possible," was based on the fact that "one of *Title VII's central purposes* is to make persons whole."  Id. (emphasis added).  Since the removal statute does not share the same "central purpose" as Title VII, it is unclear what, if any, relevance Hare's analysis has to a question arising under the removal statute.[16]  Indeed, the statutory language and purpose of the removal statute suggests that an equitable exception is impermissible under the present circumstances.  This is evident based on the following considerations:

First, "Congress intended the removal statute to 'abridge the right of removal,' and the Supreme Court has instructed that courts be mindful of this intent when interpreting the statute's meaning and effect."  Swindell-Filiaggi v. CSX Corp., 922 F.Supp.2d 514, 517 (E.D. Pa. 2013) (quoting Am. Fire, 341 U.S. at 9-10).  Federalism principles further support a narrow interpretation of the removal statute, as narrow interpretations give "[d]ue regard for the rightful independence of state governments" to "provide for the determination of controversies in their courts." Shamrock Oil, 313 U.S. at 108–09.

Second, Congress determined that the one-year rule's "modest curtailment in access to diversity jurisdiction" was a necessary price to pay for avoiding the "substantial delay and disruption" when a case is removed "after substantial progress has been made in state court."  4 H.R. Rep. No. 889, 100th Cong., 2d Sess. (1988), reprinted in 1988 U.S.C.C.A.N. 5982, 6032–33.  Congress has thus contemplated and condoned the "harm" that Defendants will suffer if the

---

[16] Similar statutory distinctions limit the applicability of the other three cases that Defendants cite.  See United States v. Payment Processing Ctr., LLC, 435 F. Supp. 2d 462, 465-69 (E.D. Pa. 2006) (interpreting 18 U.S.C. § 1345 as providing a statutory mechanism that empowers courts with "sweeping authority" to authorize asset freezes); Action Mfg., Inc. v. Simon Wrecking Co., 428 F. Supp. 2d 288, 328 (E.D. Pa. 2006) (determining whether equitable relief was justified by examining statutory language of, and legislative goals underlying, § 113(f)(1) of Comprehensive Environmental Response, Compensation, and Liability Act); Hasbro, Inc. v. Amron, 419 F. Supp. 2d 678, 692 (E.D. Pa. 2006) (finding that arbitrators' decision to bar enforceability of patent was "consistent with the terms and spirit of the underlying Settlement Agreement" and thus not a "manifest disregard of the law").

case is remanded back to state court.  A judicially-created equitable exception to prevent this harm would frustrate the legislative design.

Third, "Congress used language of flat prohibition" in crafting the one-year rule, stating that a diversity case "*may not be removed . . .* more than 1 year after commencement of the action."  Hill, 2011 WL 5854603, at *2 (emphasis added) (quoting 28 U.S.C. § 1446(b)).  Based on the unequivocal nature of this language, some courts have concluded that the one-year rule permits of no equitable exceptions, even for plaintiff misconduct.  See id. ("If Congress wished to limit the scope of this exception only to diversity cases in which there was no equitable basis to toll the removal deadline, it could easily have said so.").[17]  While courts in this jurisdiction have allowed the time limit to be equitably tolled,[18] the statutory language suggests that any equitable exception should be kept narrow in scope.

Fourth, the one-year time limit was recently amended in a manner that suggests Congress intended to limit the equitable exception to plaintiff misconduct.  The amended statute—which applies to all actions commenced after January 6, 2012—provides that an action may not be removed after one year "unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."  28 U.S.C. § 1446(c)(1).  According to the House Report, this "limited exception" was enacted in response to the rulings in some jurisdictions that the one-year time limit was a jurisdictional requirement that prohibits any equitable exception.  H.R. Rep. No. 112–10, at 15 (2011), reprinted in 2011 U.S.C.C.A.N. 576, 580.  If Congress wanted to create other equitable exceptions besides plaintiff misconduct, it could have easily done so, but it did not.

---

[17] Accord Richfield Hospitality Inc. v. Charter One Hotels and Resorts, Inc., No. 12–cv–01937 2013 WL 561256, at *2 (D. Colo. Feb. 14, 2013) ("[T]he fact that Congress felt it necessary to amend the statute to include a bad faith exception suggests that none was part of the law previously.").
[18] As discussed above, the Third Circuit has never expressly held that the one-year time limit permits equitable exceptions.

Finally, as discussed earlier, the removal statute provides that a remand order "is not reviewable on appeal or otherwise."  28 U.S.C. § 1447(d).  The Third Circuit has thus stated that a federal court "cannot vacate the order once entered," even if persuaded that the order was "erroneous."  Hunt, 961 F.2d at 1081.  In light of this statutory command, an equitable exception that allows remands to be nullified on the basis that they were erroneously decided would create "the functional equivalent of a motion to review or reconsider."  See Brierly, 184 F.3d at 532.

Given the lack of legal authority for providing equitable relief in the absence of plaintiff misconduct, creating an equitable exception under the current circumstances would run counter to the Third Circuit's instruction that the removal statute be construed against removal.  See Steel Valley, 809 F.2d at 1010.  Accordingly, the Court finds the circumstances of this case do not permit an equitable exception.

**V.      CONCLUSION**

Removal is, by Congressional design, a one-time event.  Counsel need to move promptly and correctly.  The judge only gets one "shot" at the decision.  Appeals and reconsideration are not allowed, as compared to Puccini's opera, Turandot, where the princess' suitor had three chances to guess her correct name.  The exceptions are rare, must be narrowly applied, and are not applicable here.

The Court concludes that remanding this case is warranted for three independently sufficient reasons.  First, recognizing that all doubts should be resolved in favor of remand, the Court finds substantial doubts as to whether removal can be based on Johnson without violating 28 U.S.C. § 1447(d)'s non-reviewability provision.  Second, the first paragraph of § 1446(b) does not govern this dispute, and it is doubtful that Johnson qualifies as an "order" under §

1446(b)'s second paragraph.[19]  Third, if <u>Johnson</u> qualifies as an "order" under  § 1446(b)'s second paragraph, the removal is untimely because it occurred more than a year after the action commenced under circumstances that do not permit an equitable exception.  Accordingly, this Court will **GRANT** Plaintiffs' Motion to Remand.

An appropriate order follows.

O:\CIVIL 13\13-3693 powell v. smithkline\13cv3693.memo.powell.docx

---

[19] Under the amendments to 28 U.S.C. § 1446(b) that became effective on January 6, 2012, the "first paragraph" is now § 1446(b)(1), and the "second paragraph" is now § 1446(b)(3).